UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL E. CLARK, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> JOHN THOMAS, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:09-cv-02272-GMN-GWF <br><br> **ORDER** |

Pending before the Court is *pro se* Plaintiff Michael Clark's Motion for Summary Judgment (ECF No. 55). Defendant John Thomas filed a Response (ECF No. 59), and Plaintiff filed a Reply (ECF No. 63). Also before the Court is Defendant's Motion for Summary Judgment (ECF No. 69). Plaintiff has filed a Response (ECF No. 80) and a Supplement (ECF No. 81), and Defendant has filed a Reply (ECF No. 84).

## I.     BACKGROUND

Plaintiff was formerly incarcerated at Southern Desert Correctional Center ("SDCC") under the supervision of the Nevada Department of Corrections ("NDOC"), and Defendant John Thomas was a corrections officer at that time[1]. Plaintiff alleges that Defendant, acting in an individual capacity, violated his Eighth Amendment rights.

Plaintiff alleges that on November 9, 2008, Defendant allowed another inmate, Dalvon Terry, access to the yard in Plaintiff's lock down segregation unit so that Terry could assault Plaintiff. Plaintiff alleges that Terry was a known bully with a history of assaults on other weak inmates, including another instance of assaulting a fellow inmate after having been given access by Defendant. Plaintiff alleges that since Terry was in "group one," and Plaintiff was in

---

[1] Defendant states that he left NDOC service in December 2009. (Def.'s Response to Pl.'s Mot. for Summ. J., 2:21 & n.2, ECF No. 59.)

"group two" on the day in question, and since NDOC policy is to maintain segregation of the groups, Terry's access to Plaintiff that day could not have occurred without the action of prison staff. Plaintiff includes copies of his medical records, disability forms and grievance reports along with his Affidavits in his motion and in his Reply.

Defendant moved for summary judgment, and submitted an affidavit stating that he "did not orchestrate the altercation," and did not "have any reason to believe that [Plaintiff and Terry] were going to fight until only moments before the fight started." (Thomas Decl., Ex. A to Def.'s Mot for Summ. J., ECF No. 69.) Defendant also states that he "immediately notified the institution of the disturbance via two-way radio and yelled at the inmates to stop." (*Id*.) Defendant states that both complied and that the fight "lasted no more than a few seconds." (*Id*.)

Plaintiff refers to the Report of Personnel Complaint Investigation by the NDOC Office of the Inspector General, and Defendant submitted the Declaration of Pam Del Porto along with the full Report under seal (ECF No. 71). In the Response to Plaintiff's motion, Defendant stipulated that the Court may consider the investigation report in ruling on Plaintiff's motion and stated that he does not dispute its authenticity or admissibility. (Def.'s Response to Pl.'s Mot. for Summ. J., 2:19 & n.1, ECF No. 59.)

Defendant also submitted an affidavit by Jerry Mason, who was also a Corrections Officer at the time and witnessed the aftermath of the altercation. (*Id*. at Mason Decl., Ex. B.) Mason states that "it took no more than 30 seconds" to arrive at the scene and by that time "the fight had stopped and both inmates were already wearing restraints." (*Id*.) Furthermore, he states that he witnessed no inappropriate actions by Officers, and nothing to indicate the fight was staged or otherwise allowed to continue. (*Id*.)

In the Response, Plaintiff attaches his Affidavit stating that prior to the altercation, he observed Terry talking to Defendant, after which Terry pointed to Plaintiff and Defendant

1  moved his head up and down to indicate "yes." (Clark Aff., ECF No. 80.)  Plaintiff also refers
2  to Defendant's statement in the Inspector General Investigation Report, in which Defendant
3  acknowledges that he was in charge of group escort. (Ex. C-1 to Def.'s Mot for Summ. J., ECF
4  No. 71-1.)  Plaintiff alleges that these actions constitute premeditation on the part of Defendant,
5  and a violation of Plaintiff's Eighth Amendment rights.  Plaintiff also alleges that Defendant
6  was given "the opportunity to resign or face charges" after the incident." (Clark Aff., ECF No.
7  80.)

8        Plaintiff also submitted a one-page affidavit purportedly signed and sworn "under
9  penalty of perjury" by an individual named James Coleman who witnessed the altercation.
10 (Coleman Aff., ECF No. 80.)  Specifically, the affidavit states that on the day in question,
11 Coleman was behind Plaintiff in line to go back to his cell. (*Id*.)  The affidavit states that
12 Defendant "put his arm up like a airplane or a big bird to stop everybody from walk," and that
13 when Plaintiff "try to go back, [Defendant] yell at him to go to his cell." (*Id*.)  Then, the
14 affidavit states, "[w]hen [Plaintiff] look back ahead inmate Terry hit him so hard, [Plaintiff]
15 was yelling for help, but all [Defendant] did was put his on the wall." (*Id*.)  Finally, the
16 affidavit states, "I did not see nothing else, but blood everywhere and [Plaintiff] holding his
17 knee and eye." (*Id*.)

18       In the Reply (ECF No. 84), Defendant alleges that with the Coleman declaration,
19 Plaintiff has attempted to defraud the Court with a false signature by a nonexistent individual.
20 Defendant has submitted records of the Nevada Department of Corrections to show that no
21 inmate using the name "James Coleman" was incarcerated with Plaintiff on November 9, 2008.
22 (Ex. A to Reply, ECF No. 84.)  Plaintiff responded with a "Notice of Change of Name" (ECF
23 No. 86) in which he claims that he wrote the Coleman declaration, but insists that he did not
24 sign it. (*Id*.)  Plaintiff claims that he mistakenly believed that James Matthews, inmate #96224,
25 had the same last name as his mother, whose last name is Coleman.  Plaintiff claims that it was

James Matthews who was a percipient witness and that Matthews did actually sign the declaration, however, Matthews nonetheless signed his name "James Coleman" on the affidavit drafted by Plaintiff. (*Id.*)  Defendant argues in Response (ECF No. 87) that since it is unlikely "James Matthews" improperly signed his own name as "James Coleman," a more likely explanation is that Plaintiff fraudulently submitted a false signature in an attempt to overcome summary judgment.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

1  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

2  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

### III. DISCUSSION

#### A. Legal Standard

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted).  "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement," including a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  This includes a duty "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (internal quotation marks omitted).  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828.

First, to establish an Eighth Amendment violation, the deprivation alleged must be, objectively, "sufficiently serious," resulting in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834. Second, the inmate must show, subjectively, that the prison official acted with a "sufficiently culpable state of mind," one of "'deliberate indifference' to inmate health or safety." *Id.* at 834 (internal quotation marks omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

**B.    Analysis**

In his Motion for Summary Judgment (ECF No. 55), Plaintiff submits as evidence his own affidavit, copies of his own medical records and the Nevada Department of Corrections Code of Ethics. Considering this evidence, along with the evidence submitted by Defendant, the Court finds that Plaintiff has not met his burden to establish the absence of a genuine issue of fact on each issue material to his case.

First, the Court agrees with Defendant that the authenticity of the signature on the Coleman declaration is suspect. Federal Rule of Evidence 901(a) provides that "evidence sufficient to support a finding that the matter in question is what its proponent claims" satisfies the "requirement of authentication or identification as a condition precedent to admissibility." Fed. R. Evid. 901(a). Although Plaintiff claims that a percipient witness, whose true name is James Matthews, was inadvertently misidentified by Plaintiff when he was drafting the affidavit and that Matthews then actually signed the declaration as James Coleman, Defendant has raised a valid argument disputing the authenticity of the signature. Therefore the information provided in the declaration of James Coleman (James Matthews) could reasonably

be disregarded.  Viewing all facts in the light most favorable to Defendant, Plaintiff's sole evidence supporting his account relies on his own affidavit, the copies of his medical records and the NDOC Code of Ethics he submitted.  A reasonable jury could find that Plaintiff's credibility is in doubt.  This finding would leave no evidence to establish Plaintiff's claims that his altercation with Terry was a result of Defendant's deliberate indifference to a substantial risk of serious harm to Plaintiff.  Therefore, the Court cannot find that Plaintiff has met his burden to establish the absence of a genuine issue of fact.

Regarding Defendant's motion, and viewing all facts in the light most favorable to Plaintiff, the Court must deny summary judgment as well.  The Court cannot find that Defendant has presented evidence to negate an essential element of Plaintiff's case, and cannot find that Defendant has demonstrated that Plaintiff failed to make a showing sufficient to establish each essential element to his case.

The Court finds that a reasonable jury could find in favor of Plaintiff as to the objective seriousness of the deprivation of Plaintiff's Eighth Amendment right to the minimal civilized measure of life's necessities.  That is, a reasonable jury could find that Defendant was aware of facts from which an inference could be drawn that a substantial risk of serious harm to Plaintiff existed in the form of violence at the hands of inmate Terry.

As to the subjective requirement that Defendant acted with deliberate indifference, the Court agrees with Defendant that Plaintiff's credibility is weak due to the discrepancy in the signature of the Coleman / Matthews declaration, as discussed above.  However, the Court finds that, viewing all facts in the light most favorable to Plaintiff, a reasonable jury could reasonably choose to believe Plaintiff's version of the altercation, and choose to disbelieve Defendant's version.  Plaintiff's statement that the two groups were not supposed to interact and that Terry's access to Plaintiff could not have occurred without the action of prison staff could be believed by a reasonable jury, and Defendant has presented no undisputable evidence

to contradict that.  Furthermore, a reasonable jury could believe Plaintiff's statement that just prior to the altercation resulting in his injuries, he saw Defendant and Terry talking, that Defendant nodded his head, and that this occurred while Terry was pointing directly to Plaintiff.  Finally, although the Court considers the Coleman / Matthews declaration suspect, a reasonable jury could choose to believe the statement, which describes Defendant's actions immediately prior to the altercation and appear to demonstrate culpability.

Therefore, the Court finds that both Plaintiff's and Defendant's motions for summary judgment must be denied, because a reasonable jury, drawing all inferences in favor of the nonmoving parties, could return a verdict in the nonmoving parties' favor.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 69) is **DENIED**.

**DATED** this 28th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge