# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Michael Clark,<br><br>           Plaintiff<br><br>    v.<br><br>John Thomas,<br><br>           Defendant | Case No.: 2:09-cv-02272-JAD-GWF<br><br>**Order Granting in Part and Denying in Part Defendant's Motions in Limine [Doc. 132]** |

This 1983 civil-rights action is brought by Michael Clark for corrections officer John Thomas's alleged role in allowing another inmate to assault Clark while he was detained in Nevada's Southern Desert Correctional Center. Thomas filed omnibus motions in limine on July 8, 2013, which Clark timely opposed on July 22, 2013.[1] The Court granted a motion to stay trial at the July 29, 2013, calendar call and denied the motions in limine as moot.[2] This case was reassigned is now scheduled for trial beginning July 8, 2014.[3]

On May 15, 2014, Defendant renewed his motions in limine.[4] The Court now considers those renewed motions and Clark's previously filed response to them.[5] Having considered the

---

[1] Docs. 111, 113.

[2] Doc. 112.

[3] Doc. 124.

[4] Doc. 132.

[5] Doc. 132 at 3 (writing that, aside from minor typographical corrections, "Defendant now presents the exact same motions that were presented previously"). The Court liberally construes all pro-se motions and pleadings. *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003). The Court also finds these motions appropriate for resolution without oral argument. L.R. 78-2.

parties' submissions, the Court grants in part and denies in part Thomas's motions in limine consistent with the discussion below.

**Discussion**

The Federal Rules of Evidence do not explicitly authorize motions in limine, but under the district courts' trial-management authority, judges can rule on pretrial evidentiary motions.[6] Pretrial consideration avoids the futile attempt to "unring the bell" when jurors see or hear inadmissible evidence, even when it is stricken from the record.[7] It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses.[8]

These considerations are weighed against the court's ability to consider evidence in the context of trial, where the court is "better situated . . . to assess the value and utility of evidence."[9] Limine rulings are provisional; they are "not binding on the trial judge [who] may always change his mind during the course of a trial."[10] Denying a motion in limine does not guarantee that all evidence raised in the motion will be admissible at trial.[11] Instead, it "merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[12]

---

[6] *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[7] *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs.*, 49 Cal. App. 4th 659 (Cal. Ct. App. 1996)) (citations omitted) (internal quotation marks omitted).

[8] *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[9] *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with questions of admissibility of evidence as they arise.").

[10] *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[11] *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL 3724896 (D. Nev. Sept. 17, 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

[12] *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)) (internal quotation marks omitted).

**A.     First Motion in Limine: Thomas's Request to Preclude Clark from Calling on Undisclosed Expert Witnesses**

Thomas argues that Clark should be prevented from having any expert witness testify at trial because Clark did not identify any expert during the discovery process as the Court's rules require.[13] Federal Rule of Civil Procedure 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence." Under Rule 26(a)(2)(D), "A party must make these disclosures at the times and in the sequence that the court orders." In this case, Magistrate Judge Foley's October 27, 2011, scheduling order gave the parties until December 20, 2011, "to disclose experts pursuant to Fed. R. Civ. P. 26(a)(2)."[14] Thus, if Clark wanted to offer expert-opinion testimony, he had to tell Thomas about that expert witness by December 20, 2011.

Rule 37(c)(1) "gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed."[15] This sanction is "self-executing" and "automatic" so that parties are strongly motivated to comply with the rules.[16] Even if there is no express court order on disclosure—and even without evidence of bad faith—"exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."[17] Exclusion can be appropriate even if barring experts will make it "much more difficult, perhaps

/ / /
/ / /
/ / /
/ / /

---

[13] Doc. 132 at 3.

[14] Doc. 44 at 1. In the same order, Magistrate Judge George Foley Jr. set January 30, 2012, as the cut-off date for any request to extend discovery. Doc. 44 at 2.

[15] *Id.*; *cf. Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

[16] *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note).

[17] *Id.* (citing Fed. R. Civ. P. 26(a) and Fed. R. Civ. P. 37(c)(1)).

almost impossible" for a party to prove his case at trial.[18]  Under Rule 37(c)(1), the trial court can decide to allow experts only if the failure to disclose "was substantially justified or is harmless."[19]

In his objection to the original motions in limine, Clark did not respond to the substance of Thomas's requests.[20]  Instead, Clark argued that defense counsel "had the opportunity to meet up and  confer [as] to what is relevant and irrelevant," failed to hold any such pretrial conferences with Clark, and consequentially cannot now "file any motion after the due day or deadline, this court simply do[es] not have enough time to respon[d]."[21]  Clark urged that the defense should make any objections at trial and wrote that he would "be at [his] best [and] not . . . out of line."[22]  While the Court acknowledges Clark's effort to comply, it also addresses these motions on their merits.

Judge Foley's scheduling order was issued more than two years and six months ago, the expert-disclosure deadline passed more than two years and five months ago, and Clark has not offered any justification for not identifying any experts.  Regardless of Clark's reason for not identify any expert, because he did not identify an expert witness before the deadline expired in December 2011, Clark cannot offer any expert-opinion evidence at trial.  This motion is granted.

**B.   Second Motion in Limine: Thomas's Request to Preclude Evidence of Clark's Damages Associated with Medical Care, Lost Wages, and Ability to Work**

*1. Past and future damages, including medical care and lost wages*

Thomas argues that Clark should be prevented from seeking any past or future damages.[23]  Past damages are for harm that happened in the past, such as medical costs for a surgery that has

---

[18] *See id.* (discussing the difficulty of rebutting a damages calculation without expert witness).

[19] Fed. R. Civ. P. 37(c)(1)); *see also Yeti*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)).

[20] *See generally* Doc. 113.

[21] Doc. 113 at 1–2.

[22] *Id.* at 2.

[23] Doc. 132 at 4.

4

1  already been performed.²⁴  Future damages are for costs that will be incurred in the future for
2  injuries that happened in the past; it could be that the plaintiff's injuries will require medical
3  treatment, for example, or will prevent him from working when he would have been able to earn
4  money.²⁵  Thomas urges that because Clark has not timely disclosed future-damages
5  calculations—and because Clark has not named any expert witness like a doctor who can testify
6  about Clark's medical condition, prognosis, or need for future treatment, or an economist or
7  accountant who can testify about lost-wages calculations—Clark should be prevented from saying
8  anything about any damages whatsoever.²⁶

9  Federal Rule of Evidence 701 states that non-expert or lay-person opinion testimony is
10 limited to statements "(a) rationally based on the witness's perception; (b) helpful to clearly
11 understanding the witness's testimony or to determining a fact in issue; and (c) not based on
12 scientific, technical, or other specialized knowledge within the scope of Rule 702."²⁷  In addition,
13 Rule 602 permits a witness to testify about a matter if he has personal knowledge about it.  Clark
14 may offer testimony that could support damages if what he says is (1) logically based on what he has
15 personally experienced, (2) focused on helping the jury determine facts that are important to
16 deciding the case, and (3) not the kind of testimony that an expert would offer.  The same rules
17 apply to any other lay, non-expert witness who may testify about Clark's prison experiences, Clark's
18 apparent physical condition to the extent these witnesses personally observed it, Clark's apparent
19 ability to work, or other damages-related facts if these witnesses have direct, personal knowledge of
20 these facts.

---

²⁴ *See, e.g.*, *Sanchez v. United States*, 803 F. Supp. 2d 1066, 1074 (C.D. Cal. 2011) (discussing past and future damages in a tort case).

²⁵ *See, e.g.*, *Sutton v. Earles*, 26 F.3d 903, 919 (9th Cir. 1994) (discussing future medical expenses and future earnings).

²⁶ Doc. 132 at 4.

²⁷ Fed. R. Evid. 701.

5

Clark has not disclosed any experts and is now barred from offering any expert testimony at trial.[28] If Clark or any of his witnesses testifies, therefore, they cannot speak as medical experts, offer any diagnosis or prognosis about Clark's medical condition, or testify as any other kind of experts. Additionally, Clark is cautioned that if he intends to introduce any medical records, they will need to be properly authenticated by the medical-care providers' custodians of records, and he is cautioned that the rules of discovery may bar him from attempting to show the jury any documents or other evidence that was not timely disclosed to the defendant before the discovery deadline or authenticated by a proper witness with direct, personal knowledge of the document's authenticity.

Clark is permitted to put on evidence about his damages within the boundaries established for lay-witness testimony, and the jury will make determinations about each witness's credibility.[29] The motion to preclude all damages evidence is therefore denied.

### *2. Evidence regarding Clark's ability to work*

Thomas also asks the Court to prevent Clark from saying anything that indicates he is unable to work because of Terry's alleged assault.[30] The defense urges that allowing such references "without evidentiary basis" would "inflame the jury, cause speculation, and unfairly prejudice" him.[31] Clark and his witnesses with personal knowledge of Clark's employability may testify about his ability to work if what they say is (1) logically based on a personal experience, (2) focused on helping the jury decide facts important to deciding the case, and (3) not the kind of testimony that an expert would offer. In short, Clark's testimony and that of any witnesses he may call must comply

---

[28] *See supra* at 4.

[29] *See, e.g.*, *United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011) (quoting *United States v. Tam*, 240 F.3d 797, 806 (9th Cir. 2001)) ("[A]bsent facial incredibility, it is not our role to question the jury's assessment of witness credibility.").

[30] Doc. 132 at 5.

[31] *Id.*

6

with Rule 602 and Rule 701 of the Federal Rules of Evidence.[32]  For example, such lay testimony might include a discussion of the type of work that Clark is qualified to do, what physical limitations he is experiencing that impact his ability to perform that work, how those limitations stem from the attack by Terry, and what efforts Clark has made to overcome those limitations and obtain employment despite them.  Clark may not offer expert, medical, or scientific evidence about his ability or inability to work or about the amount of money he has lost or will lose in the future due to a lack of employability because he disclosed no expert.  This motion in limine to preclude all evidence of inability to work is denied, subject to these limitations.

**C.    Third Motion in Limine: Thomas's Request to Preclude Clark from Seeking Injunctive Relief at Trial**

Thomas seeks to preclude Clark from seeking injunctive relief at trial.[33]  In his amended complaint, Clark prays for "injunctive relief for medical care and expenses for damages to right eye."[34]  The defense appears to concede that such relief might be appropriate if Clark was still an inmate in the state of Nevada, but Clark is no longer detained.[35]  "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."[36]  This is because, once released, the plaintiff "is no longer subject to the prison conditions or policies he challenges."[37]

---

[32] The Federal Rules of Evidence can be found on the United States Courts website, www.uscourts.gov, under the Rules and Policies tab.

[33] Doc. 132 at 5.

[34] Doc. 21 at 9.

[35] *See* Docs. 22, 24 (plaintiff's changes of address).

[36] *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402–03,(1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986)).

[37] *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (citing *Rhodes v. Stewart,* 488 U.S. 1, 4 (1988) (per curiam)).

Clark is prohibited from asking the jury for an injunction for a separate reason: injunctive relief is an equitable remedy awarded by the court, not a jury.[38] Thus, the request for an injunction is one to be considered by the Court sitting in equity, not the jury. And this Court (sitting in equity) now concludes that this is not an appropriate case for injunctive relief.

Under the traditional test:

> injunctive relief is appropriate when a party demonstrates (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a[]n . . . injunction.[39]

Plaintiff's harm is not irreparable because if it can be remedied, it will be remedied with a monetary award, not the extraordinary remedy of an injunction. This is a personal-injury case arising from events that allegedly occurred in 2008. Plaintiff's remedy for these personal injuries, if any, is money damages. The Court finds that the equitable remedy of an injunction is not appropriate here. Accordingly, Clark may not seek an injunction at trial or at any future phase of this case. The motion in limine is granted.

**D. Fourth Motion in Limine: Thomas's Request to Preclude Clark from Referencing a Cover Up or That a False Notice of Charges Was Filed Against Him**

Clark's motion for summary judgment includes the assertion that, "[t]o cover up his act," Thomas filed false charges against Clark.[40] Thomas asks the Court to prohibit Clark from making unsubstantiated, inflammatory comments like this during trial—and argues that Clark's "sole motivation in making such claims" is to put Thomas and the Nevada prisons in a negative light and to prejudice the jury.[41]

---

[38] *See, e.g.*, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

[39] *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)) (internal quotation marks omitted).

[40] *See* Doc. 55 at 5.

[41] Doc. 132 at 6.

8

Federal Rule of Evidence 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Clark's allegations regarding a cover up or false charges are not relevant to Clark's sole Eighth Amendment claim and, under Rules 401 and 402, therefore cannot be permitted. If Thomas brought false charges against Clark, this might raise the question of "another violation of Plaintiff's Constitution[al] Right[s]," as Clark argues in his motion for summary judgment.[42] But this serves to underscore the relevance problem under Rules 401 and 402: Clark brings only one claim for deliberate indifference or reckless disregard.[43] An alleged-after-the-fact cover up or retaliation with false charges has no relevance to the sole claim to be tried here.

Even if Clark's allegations had some marginal relevance to his sole remaining claim, the Court would need to exclude them under Rule 403 because any usefulness would be outweighed by prejudice. Under Rule 403, the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The mere mention of a cover up or false charges would also be highly prejudicial: it would suggest Thomas did something inappropriate for which he did not want to be held accountable. The probative value of such a statement—which is only an argument at this point and does not even rise to the level of evidence—is therefore strongly outweighed by the dangers of unfair prejudice, confusing the issue, and misleading the jury. The Court notes that Clark intends to call, as a witness, the sergeant "of disciplinary hearings of the incident in question."[44] The Court orders Clark not to mention any alleged "cover up" or "false charges" when questioning this or any other witness.

---

[42] *See* Doc. 55 at 5.

[43] Doc. 21 at 4–5.

[44] Doc. 103 at 5.

9

1    Thomas does not specify what other "inflammatory comments" he is concerned Clark will
2 make without evidentiary support.[45] The Court declines to provide a ruling on what hypothetical
3 statements this litigant may or may not make. Clark is cautioned, however, that he should not make
4 statements that are unfairly prejudicial to the other side, that have no connection to the single claim
5 in this case, or for which he has no supporting evidence. If he does so, he may be sanctioned.
6    The motion to preclude Clark from making cover-up or false-charges references is granted.

**E.   Fifth Motion in Limine: Thomas's Request That the Court Allow No Reference to State Criminal Statutes**

Clark's proposed pretrial order cites Nevada Revised Statutes §§ 212.020 and 197.200, which are state criminal statutes regarding inhumanity to prisoners and oppression under color of office.[46] Thomas argues that, because the Court's screening order recognizes this suit only as an Eighth Amendment suit for money damages against Thomas in his personal capacity, Clark should not be allowed to make criminal-law references in prosecuting his civil-rights case.[47] Thomas also argues that NRS 212.020 and 197.200 provide no private right of action that would permit Clark to even raise them in a lawsuit.[48]

Clark is reminded that his suit proceeds to trial as a civil case, not a criminal case, so these criminal statutes have no relevance in his case. This motion is granted. Clark is cautioned that he shall not refer to state criminal statutes at trial.

/ / /
/ / /
/ / /

---

[45] *See* Doc. 132 at 6.

[46] *See* Doc. 103 at 4.

[47] Doc. 132 at 6 (citing Doc. 25).

[48] *See id.*

**F.   Sixth Motion in Limine: Thomas's Request to Preclude Clark from Offering Testimony from Unlisted Witnesses**

Thomas also moves to prevent Clark from attempting to offer the testimony of witnesses who are not listed in his pretrial order filed on January 13, 2013.[49] The defense relies on Local Rule 16-3(d), which provides that "[e]xcept when offered for impeachment purposes, no exhibit shall be received and no witnesses shall be permitted to testify at the trial unless listed in the pretrial order."[50] For good cause shown, the Court may allow exceptions.[51] Clark lists nine witnesses in his pretrial order, including Davlon Terry, the inmate who allegedly attacked Clark in prison.[52] Because Clark has not asked to call witnesses he did not list in his pretrial order, there is no need for this Court to enter an order that does what Local Rule 16-3(d) already accomplishes. The motion to exclude witnesses not listed in Clark's pretrial order is denied without prejudice. Clark is cautioned, however, that he may not offer testimony from a witness he has not properly disclosed.

**G.   Seventh Motion in Limine: Thomas's Request to Prevent Clark from Offering Narrative-Style Testimony**

Thomas argues that Clark, who will be proceeding in a pro-se capacity, should be precluded from testifying in a narrative fashion when he takes the stand to offer his own testimony. He argues that Clark may testify "in a rambling narrative fashion which places inadmissable, irrelevant, and highly prejudicial material before the trier of fact" before Thomas has opportunity to object.[53] The defense is concerned it will lack chances to hear questions, object, and create a clear record for appeal.[54] Thomas requests that the Court either require Clark to bring a reader who will ask

---

[49] *Id.* at 7 (citing Doc. 103 at 5).

[50] *Id.*

[51] LR 16-3(d).

[52] Doc. 103 at 5.

[53] Doc. 132 at 8.

[54] *Id.*

11

questions that Clark would prepare in advance or that the Court itself read the questions.[55] If the Court chooses to allow Clark to testify in a narrative form, Thomas urges that his counsel should be given much leeway to object to inappropriate evidence. Clark does not ask to testify in any specific manner.

Litigants are permitted under 28 U.S.C. § 1654 to "plead and conduct their own cases personally," consistent with court rules. Informalities by pro-se litigants are tolerated more freely than informalities by counsel.[56] But the district judge must still conduct trial impartially and fairly.[57] She "is more than a moderator or umpire"; she is responsible "to promote a fair and expeditious development of the facts unencumbered by irrelevancies."[58] Judges may question witnesses if this is "necessary to clarify a matter or to more fully develop the facts" for jury's benefit.[59] Pro-se plaintiffs may also testify in narrative fashion, however, if they focus on evidence allowed under the rules.[60]

Clark may testify in a narrative format if he wishes to be a witness at trial. He is not required to submit questions in advance. To preserve the flow of trial, Clark is hereby directed to break his testimony into two sections: (1) the events that gave rise to his claim and (2) the impact of those events on him. If Clark begins discussing evidence that may not be raised at trial, Thomas's counsel

---

[55] *Id.*

[56] *United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *see also Bates v. Jean*, 745 F.2d 1146 (8th Cir. 1984) (reversing the district court's dismissal of a prisoner's civil-rights suit based on inconsistent verdicts at trial and stating that pro se litigants are usually given greater flexibility than attorneys.).

[57] *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975). Manifest injustice may result where a plaintiff is unable to present evidence supporting his position. Rebecca A. Albrecht, et al., *Judicial Techniques for Cases Involving Self-Represented Litigants*, 42 A.B.A. Judge J. 1 (Winter 2003).

[58] *Trapnell*, 512 F.2d at 12.

[59] *Id.*

[60] *Cf. Jackson v. Doe*, 10-cv-00771-LRH, 2014 WL 358689, *at 1 (D. Nev. Jan. 31, 2014).

1 must then object, and the Court will direct him to stop discussing that information.[61] If Clark
2 persists in talking about information that is not allowed, the Court will require him to ask a question
3 before answering it himself.

4     The motion in limine is denied, subject to these instructions.

**H.     Eighth Motion in Limine: Thomas's Request to Allow No Mention of Settlement Negotiations or Anything Discussed during Settlement Negotiations**

7     Thomas next moves to prevent Clark from mentioning settlement negotiations, conferences,
8 or anything discussed or that happened during settlement conferences in this case. Federal Rule of
9 Evidence 408 prohibits litigants from mentioning at trial "conduct or a statement made during
10 compromise negotiations about the claim."[62] Settlement negotiations are motivated by a desire for
11 peace.[63] Public policy also favors settling lawsuits through negotiation.[64] The Court may allow
12 settlement evidence for another reason, such as proving witness bias or proving that someone is
13 trying to block a criminal investigation, but there is no evidence that these reasons apply here.[65]
14 Clark has not offered any reason to allow reference to anything discussed during settlement, and the
15 Court sees none.

16     This motion in limine is granted; the parties shall not mention or reference at trial the fact
17 that settlement conferences were conducted in this case, or reference anything that was discussed or
18 happened at those conferences.

19 **I.     Ninth Motion in Limine: Thomas's Request to Exclude Medical Testimony**

20     Thomas argues that Clark should not be allowed to have lay witnesses testify to any medical

---

[61] *Id.*; *see also* Fed. R. Evid. 403.

[62] *See id.*

[63] *United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982).

[64] *Id.* at 92 (holding that Fed. R. Evid. 408 prevents using settlement negotiations to determine damages amounts).

[65] Fed. R. Evid. 408.

13

diagnosis, medical prognosis, or injury causation because these issues require expert testimony.[66] Thomas urges the Court to avoid prejudice and confusion by only allowing lay witnesses to discuss facts that are within their personal knowledge and are rationally based on their perception.[67]

Federal Rule of Evidence 701 governs testimony by lay witnesses. It states that non-expert opinion testimony is limited to statements "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[68] In contrast, Rule 702 requires expert testimony to be specialized knowledge that is based on sufficient data and results from reliably applied principles and methods, as this order discusses above.

The Ninth Circuit recognizes that lay witnesses (i.e., people who are not qualified medical-care providers) may not provide any medical diagnosis because "medical diagnoses are beyond the competence of lay witnesses to make."[69] When a lay witness testifies about a person's symptoms or about how a condition affects that person's ability to function, this is acceptable evidence.[70] But these witnesses must be "in a position to observe [plaintiff's] symptoms and daily activities" before testifying as to his condition.[71]

Rule 701 prevents Clark from personally testifying about—or calling lay witnesses to testify about—any medical diagnosis or prognosis for his eye, his knee, or any other medical condition he may have because lay witnesses are not qualified to give a name or ascribe symptoms to a medical condition and are not qualified to testify about how much pain Clark is likely to suffer in the future,

---

[66] Doc. 132 at 10.

[67] *Id.*

[68] Fed. R. Evid. 701.

[69] *Tobeler v. Colvin*, 2014 WL 1509018, *at 2 (9th Cir. Apr. 18, 2014) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)).

[70] *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

[71] *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

how long his suffering is likely to last, or any other prognosis-related statements. Because Clark is not permitted to bring in any expert witnesses,[72] he may not ask any witnesses to testify about those issues. But Clark may ask witnesses to talk about what they have personally and directly observed about his physical appearance, and he may testify about what he personally experienced.

The motion in limine is granted, consistent with these directions, as to lay witnesses.

**J.     Tenth Motion in Limine: Thomas's Request to Prohibit Certain Statements to Jurors**

Thomas's final motion in limine asks the Court to prevent Clark from making statements that would encourage the jury to make moral or social judgments when they enter a verdict.[73] Thomas requests that the Court prohibit the following eight types of statements during the entire trial:

1. Clark asking jurors to put themselves in his position, including asking what remedies they would seek and including knowing his character.
2. Clark sharing his personal opinion as to justice, credibility, or culpability issues.
3. Clark expressing disdain for Thomas or Thomas's witnesses or vouching for himself or his own witnesses.
4. Clark asserting that his case is a crusade for justice or other, similar statements.
5. Clark arguing that Thomas wasted jurors' time or taxpayer money, must take responsibility for his conduct, or is attempted to prevent an injured person from relief.
6. Clark inviting jurors to use this case to send a message or to punish Thomas.
7. Clark indicating that Thomas refused to take responsibility, refused to offer compensation, or has a deep pocket—or suggesting that government entities are inherently evil, out to get the little guy, or always disregard individual rights.[74]

Thomas urges that these emotional arguments would improperly inflame the jury against him.[75]

While the Court recognizes that Clark has not yet made any of these comments at trial, the Court seeks to instruct Clark ahead of trial so that he knows what to expect. Clark and Thomas may not state their personal opinions about the following issues: whether the case represents a just case, what justice is, whether any witness is believable or not, Clark's character, or Thomas's character.[76] The parties also may not make any golden-rule argument, which is "an argument asking jurors to

---

[72] *See supra* at 4.

[73] Doc. 132 at 11–12.

[74] *Id.*

[75] *Id.* at 12.

[76] *See Lioce v. Cohen*, 174 P.3d 970, 983 (Nev. 2008) (citations omitted).

15

place themselves in the position of one of the parties."[77]  Clark is directed to the above list of seven items as examples of opinions that would be inappropriate to voice in front of a jury.  Trial must be based on evidence that the parties present and the jury objectively weighs; it is not a contest of the parties' opinions.  Thomas's motion is granted as to opinion-based statements to jurors.

Thomas also asks the Court to preclude Clark from discussing his personal life, including family and friends.[78]  The Court finds that these statements might be relevant and therefore denies this part of Thomas's motion.

**Conclusion**

Accordingly, and with good cause appearing,

**IT IS HEREBY ORDERED** that defendant John Thomas's omnibus motions in limine **[Doc. 132]** are **GRANTED in part** and **DENIED in part** as explained in this order.

Thomas's first motion in limine as to expert witnesses is **GRANTED**.  Clark may not offer the testimony of any expert witnesses at trial.

Thomas's second motion in limine as to damages is **DENIED**.  Clark may call witnesses to testify as to his past and future damages and his ability to work, but these witnesses (including Clark) may not testify as expert witnesses.  They must only make statements that are (1) logically based on what they have personally experienced and seen, (2) focused on helping the jury understand the facts that are important to deciding this case, and (3) not the kind of testimony that experts would offer.

Thomas's third motion in limine as to injunctive relief is **GRANTED**.  Clark may not seek injunctive relief at trial or any other phase of this case.

Thomas's fourth motion in limine as to references to a cover up or false charges is **GRANTED**.  These statements are not relevant to Clark's Eighth Amendment claim and are unfairly prejudicial; Clark may not mention allegations of a cover up or false charges at trial.

---

[77] *Id.* at 984 (citations omitted).

[78] Doc. 132 at 11.

Thomas's fifth motion in limine as to references to criminal statutes is **GRANTED**.  This is a civil case, not a criminal case, and Clark may not reference any state criminal laws at trial.

Thomas's sixth motion in limine regarding witnesses not listed in Clark's pretrial order is **DENIED**.  Local Rule 16-3(d) already prevents Clark from trying to offer testimony from witnesses he did not timely disclose.

Thomas's seventh motion in limine as to narrative testimony is **DENIED**.  Clark may testify in a narrative format if he chooses to testify at trial.  He is not required to prepare questions for another person to read to him.  However, Clark must organize his statements into two sections: (1) the events that gave rise to his claim and (2) the impact of those events on him.  If Clark begins and persists in discussing evidence that the Federal Rules of Evidence do not allow him to discuss at trial, then the Court will require Clark to ask himself a question before he answers it.

Thomas's eighth motion in limine as to settlement evidence is **GRANTED**.  Nothing discussed during settlement conferences, settlement negotiations, or any other settlement-related event may be mentioned at trial, and the parties also may not even mention that there were any settlement conferences.

Thomas's ninth motion in limine as to medical testimony is **GRANTED**.  Clark may not offer any expert testimony about his medical condition or prognosis, but his witnesses may testify about what they have personally and directly seen about his physical appearance.  Clark is also permitted testify about what he has personally experienced.

Thomas's tenth motion in limine as to opinion-based statements to jurors is **GRANTED** in part and **DENIED** in part.  The parties may not state their personal opinions about the justness of this case, whether any witness is believable, or what kind of character Clark and Thomas have.  They also may not make any golden-rule arguments that ask the jurors to put themselves in Clark's place

/ / /

/ / /

17

or Thomas's place. Statements about Clark's family and friends might be relevant, however, and the Court does not exclude these statements at this time.

DATED June 6, 2014.

_____
Jennifer A. Dorsey
United States District Judge